**SHIDELER v. ROCHELLE et al.**

**No. 14402.**

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1953.

Rehearing Denied Oct. 26, 1953.

Robert S. Butts, Butts & Grosenbaugh, Hollywood, Cal., Michael E. Culligan, Jr., New Orleans, La., Donald V. Yarbrough, White & Yarbrough, Dallas, Tex., for appellant.

John Plath Green, Philip I. Palmer, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

These appeals are from a judgment ordering Hal Shideler to turn over certain funds to the trustee of Liberty Broadcasting System, Inc., a bankrupt, and from an order adjudging him in contempt for disobeying the turnover order.

Shideler is a partner of the firm of Rutledge & Shideler Advertising, Long Beach, California. On January 12, 1952, he, on behalf of Rutledge & Shideler Advertising, and Benton Paschall, on behalf of Liberty Broadcasting System, Inc., entered into a written agreement, called an insertion order, under which it was agreed that Liberty would make 200 broadcasts over 346 Liberty stations of a program called "Amana Baseball Line-Up", advertising Amana Home Freezers. In the agreement, Amana Refrigeration, Inc., was referred to as "Client." The broadcast of these programs began in March, and continued until the latter part of April, when Amana terminated the contract. Liberty was adjudicated a bankrupt on May 30, 1952. Thereafter, negotiations were had looking to the collection of the amount claimed to be due for the broadcasts. The testimony as to what transpired is in sharp conflict. However, there is no dispute that the Bankruptcy Court authorized the trustee to execute a release which discharged Amana from all further liability upon the payment of $15,000, and that Amana issued its check in that amount to Rutledge & Shideler Advertising.

Shideler denied that he participated in the release and court order, though the testimony directly to the contrary is strong and was credited by the referee. However, it was not denied by Shideler that he received a check for $15,000, from Amana on or about June 24th. He did deny that the money was paid to him in settlement of an account owed by Amana to Liberty, and contended that it was paid entirely for his services to

Amana. He said that the "contribution", the money, he received from Amana was "entirely voluntary." The only reason he received any money at all from Amana was because of the generosity of its general manager. Shideler denied that he had told Paschall that the account could be settled for $15,000, or asked him to secure a release from the trustee for that amount, as testified to by Paschall. Shideler testified that he deposited the check to his personal account, and the proceeds, except for between $2,000 and $3,000, was used to pay debts incurred in connection with the broadcasts and for other expenses. These disbursements were made within two or three weeks after he received the check.

The referee found that Amana was indebted to Liberty in an amount which was in dispute. In order to resolve this dispute and settle the account, Paschall, as an officer of Liberty, and Shideler, as the agent and representative of Liberty, negotiated with Amana and reached an agreement whereby Liberty would accept $15,000 in full satisfaction of the indebtedness. Of this amount, $11,722.50 was to be paid to the trustee, $2,250 was to be paid to Shideler as his commission and $1,027.50 was to be paid to Paschall as his commission. Amana demanded a complete release from the bankrupt before it would make the payment. On June 20, 1952, the trustee executed a release, confirmed by order of the court, and caused it to be sent to Paschall, who delivered it to Mrs. Shideler. They, Shideler and his wife, then transmitted it to Amana. Amana, relying upon the release as being a full discharge of its indebtedness to Liberty, paid the $15,000 to Shideler. The check was received by Shideler and deposited in the bank to his individual credit, "and a part of the fund is still remaining in the bank to his credit." The referee further found that no part of the funds had been paid to the trustee and that Shideler was holding and claiming the same as his own. An order directing Shideler to pay the sum of $11,722.50 to the trustee was entered

by the referee and, upon petition to review, was affirmed by the court.

The referee, in his certificate to the court upon petition to review, stated his reasons for concluding that Shideler was in possession of the fund at the time the show cause order was issued.[1] This statement clearly negatives a finding that Shideler was in possession or control of the fund when the show cause order issued or when the turnover order issued, and evidences a misconception of the purpose of a turnover proceeding. This is further illustrated by the statement of the referee that at the time the petition to review was filed Shideler did "not attempt to show that the fund had been taken away from him by causes beyond his control or a vis-major."

■ The primary condition upon which a turnover order may be issued is the possession of existing property or its proceeds capable of being surrendered by the person ordered to do so. A turnover proceeding is not appropriate if, at the time it is instituted, the property or its proceeds have already been dissipated, no matter when the dissipation occurred. Maggio v. Zeitz, 333 U.S. 56, 64, 68 S.Ct. 401, 92 L.Ed. 476.

■■ The presumption of continued possession has no application and may not be relied upon to show present possession in the face of a finding that the respondent did not have the property or its proceeds at the time of the turnover proceedings. This is so whether his failure to have it is due to "his own wilful and deliberate action of disposing of it", as found by the referee, or for some other reason. If, as is indicated by the evidence, Shideler obtained property of the bankrupt by inducing the trustee to execute a release to its creditor, and then converted it to his personal use, his conduct is inexcusable. However, this is not a matter to be dealt with in a turnover proceeding, for, as stated by the Supreme Court:

"Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however reprehensible, warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow." Maggio v. Zeitz, supra, 333 U.S. at page 64, 68 S.Ct. at page 405.

Since we are of the opinion that the turnover order was improvidently issued for the reasons stated, we need not consider the sufficiency of the evidence to sustain the finding that the fund in question was the property of the bankrupt.

■ It follows that the order adjudging Shideler in contempt for failure to comply with the turnover order is without legal basis. The judgments appealed from are reversed.

Judgments reversed.

1. "In discovering who had possession of the property, the rule and presumption of evidence of recent possession is invariably involved, and when a known state of facts are shown to exist, as in this case, the receipt of the money, $15,000.00, by Hal Shideler on June 25, 1952, when he made deposit of it in the Citizens National Bank of San Bernardino, California in his individual name, coupled with his direct testimony that on the date of the first hearing, October 2, 1952, he had about $3,000.00 of it, and again on the final date of the hearing, October 9, 1952, that he had only a few hundred dollars of it, is amply sufficient to warrant by clear and convincing proof that on the date the show cause order was issued, July 17, 1952, 23 days after he had deposited it in the Bank to his personal credit, that he still had the same except for his own wilful and deliberate action of disposing of it, with intent to rely upon the defense of inability to comply with the order."